## EDDINS V. WILSON.

1. Where a deposition was taken upon affidavit, that the witness was about to leave the State, etc. it cannot be excluded at the trial, by showing that the wit ness still *resided* in the State, about eighty miles distant ; for this may be true even if he be *temporarily absent.* It is not necessary that the witness should actually change his residence, in order to permit his deposition to be read.

2. A fraudulent deed is valid, against the party making it, and cannot be defeated by a subsequent vendee, whose purchase was conceived in fraud. All title hav- ing passed from the vendor by the *first deed,* he had none to transfer by the *second ;* and consequently the second vendee, who stands in the same predica- ment with the vendor, cannot hold the property as against the party claiming under the first conveyance.

3. Where, however, the first conveyance was fraudulent, and the second was made upon *valuable consideration* and in *good faith,* the latter shall prevail.

THE plaintiff in error brought an action of *Trover* against the defendant in the circuit court of Pike, for the conversion of certain negro slaves, alleged to be the property of the plaintiff.

The case was submitted to the jury on the plea of " not guilty," and a verdict was returned for the defendant.

On the trial, the presiding judge sealed a bill of exceptions, from which it appears, that the defendant offered in evidence, the deposition of a witness, which had been taken, on the ground that he was about to leave the State. The reading of this depo- sition was objected to, because the witness still *resided* in the State, about eighty miles from the place of trial, but the objection was disregarded, and the deposition read to the jury.

The plaintiff then introduced a deed for the negroes, alleged to have been converted, made by his father, William Eddins, to him, in consideration of natural love and affection, and one dol- lar—this deed was dated the 28th September, 1832, and was duly recorded—at that time the plaintiff was under the age of twenty-one years, and lived with his father.

The defendant, as evidence of his title, offered a bill of sale

from William Eddins, the father to him, in consideration of six hundred dollars, dated the 2d October, 1832. Evidence was adduced tending to show, that the deeds offered by both parties were fraudulent and made to delay creditors.

Under this state of facts, the plaintiff moved the court to charge the jury, that if they believed the bill of sale made to the defendant, was fraudulent and void, that the plaintiff was entitled to recover, although they might believe the bill of sale, under which he claimed title, was also fraudulent, on the ground that it was the eldest bill of sale; which charge was refused by the court, who charged the jury, that if they believed, from the evidence, that the bills of sale offered in evidence, were made to delay creditors, that they were both fraudulent and void; and if the plaintiff's bill of sale, was the only evidence of title, shown by him, to the property sued for, and that the same was fraudulent, the jury should find for the defendant, although his bill of sale was fraudulent. To which charge the plaintiff excepted, and judgment being rendered in favor of the defendant, the plaintiff has prosecuted his writ of error to this court, and assigns as causes for the reversal of the judgment of the circuit court, the several decisions shown by the bill of exceptions.

DARGAN, for the plaintiff.
GOLDTHWAITE, for the defendant.

COLLIER, C. J.—By the second section of the act of 1807, it is enacted that, "if any person who may be a witness in any cause, depending in any of the said courts, shall be under the necessity of leaving this territory before such cause is to be tried, or even before it be at issue, upon oath thereof being made before any judge or justice of the court wherein the cause is depending, such judge or justice is hereby empowered to take the deposition of such witness, etc." [Aik. Dig. 126.]

The suggestion on which the deposition read on the trial, was taken, is recognized by the statute as authorizing the taking of testimony in that manner. And in the absence of any thing appearing to the contrary, we must intend, that every es-

sential to the regularity of the deposition was observed. This being the case, is the mere fact that the witness *resided* within the jurisdiction of the court, at the time of trial, a sufficient cause for the exclusion of his evidence? Now, this may be true, and the same reason still exist, that influenced the defendant in taking his testimony. It is not necessary that a witness should actually change his residence, in order to permit his deposition to be read. The act cited, contemplates no such thing, it merely supposes that the witness *is under the necessity of leaving the State,* not that he is to remove from it permanently. Taking this view as correct, is it not obvious that a person may reside at one place and be at another, at the same time. It is not pretended that the witness was actually *at home,* within the jurisdiction of the court; if such proof had been offered, the case would have been different, as it is declared that "all depositions shall be considered as taken *de bene esse.*" [Aik. Dig. 127.]

In respect to the charge to the jury, it seems to suppose that every formality, essential to the validity of the deeds, offered by the respective parties, had been observed ; and the only inquiry for the jury was, whether they were not fraudulent for matter extrinsic. Both deeds, must, in the aspect in which they are presented, be regarded as operative against the donor, or vendor, and the only question is, which is entitled to a preference as between *the parties in this case.* Though the deed to the plaintiff may have been executed with a fraudulent intent, still it might have been enforced against the party making it. The same may be said of the defendant's deed—and both are void, as against *creditors and bona fide* purchasers. But there is no law which invalidates the first, in favor of a purchaser coming after it, who cannot show his purchase to have been made in good faith.

A fraudulent deed then, being valid against the party making it, cannot be defeated by a subsequent vendee, whose purchase was conceived in fraud. All title having passed from the vendor by the first *deed,* he had none to transfer by the second, and consequently the second vendee, who stands in the same predi-

cament with the vendor, cannot successfully resist a recovery. The law, however, is entirely different, if the second purchaser can show that the transfer under which he claims, was made for a *valuable consideration*, and in good faith. Then the statute of frauds, which avoids every gift, grant, or conveyance of lands, tenements, and hereditaments, goods, or chattels, made to delay, hinder, or defraud creditors, or purchases, would apply with all force. But a purchaser who would invoke the aid of this statute, must appear to be such, under circumstances, that the law will recognize the validity of his purchase. (Aikin's Dig. 207.) This conclusion is sustained by the opinion of this court in Rochelle v. Harrison. (8 Porter's Rep. 351.)

The view taken by the circuit court was induced, we suppose, by the influence which the maxim *in pari delicto melior est conditio defendentis* was supposed to exert. That maxim is confessedly salutary; but it does not reach to a case like the present. —A fraudulent vendor, we have seen, cannot avoid his own act; and if it were allowable for him to do it indirectly by a subsequent conveyance, equally obnoxious to honesty, it would only be necessary for him to commit one act of fraud, to defeat another. But on this point, it is sufficient to say, that the plaintiff is entitled to recover, as against one showing no better title than himself—that the defendant did not set up a better title, and that not being a purchaser, within the meaning of the statute of frauds, the defendant cannot successfully resist a recovery.

The consequence is, that the judge of the circuit court erred in his charge to the jury—and the judgment is, therefore, reversed and the cause remanded.