## DENT vs. PORTWOOD.

1. One distributee of an estate, who after the division, has sold his portion to another, may by release be made a competent witness for the latter in a controversy involving the title to the property.
2. A witness, whose interest is made to appear otherwise than by the examination of the opposite party, is incompetent to prove that he has been released.
3. It is incumbent on the party excepting to set out so much of the proof as is necessary to show that a charge asked by him is not abstract.

Error to the Circuit Court of Pickens. Tried before the Hon. Geo. Goldthwaite.

THIS was an action of detinue by the defendant against the plaintiff in error for a slave. On the trial the plaintiff proved that the slave was once owned by Robert Oliver, deceased, and was allotted to Jefferson W. Oliver, one of the distributees, on a division of the estate, by whom he was sold to the plaintiff. The plaintiff then, in opposition to the defendant's objection, the ground of which will be seen by reference to the opinion of the court, was permitted to read to the jury the deposition of the said Jefferson W. Oliver. The defendant proved that said Robert Oliver before his death made a bill of sale of and delivered said slave to him. There was evidence tending to show that this bill of sale was made with the intent to hinder and delay the creditors of said Robert Oliver, and that the defendant participated in the fraud; that the said plaintiff, who was a son-in-law of the grantor, knew of the execution of said bill of sale to the defendant and of the circumstances under which it was made; and that the consideration of the sale of said slave from

the said Jefferson W. Oliver to the plaintiff was "the share of the estate of said Robert Oliver allotted to said plaintiff," in right of his wife, "and of the slaves included in the bill of sale to Dent," the defendant. The defendant asked the court to give the following charge—That although the jury should believe the bill of sale from Robert Oliver to the defendant was made to defraud creditors—yet if they also believed that the plaintiff had notice of the making of it and knew that it was fraudulent; and should further believe that the consideration of the sale of said slave by Jefferson W. Oliver to plaintiff was the share of the estate of the said Robert Oliver which was allotted to said plaintiff in right of his wife, and included in said bill of sale to said defendant, then the plaintiff could not recover, which charge the court refused to give. To the ruling of the court and the refusal to charge as asked the defendant excepted, and now assigns them as error.

J. L. MARTIN, for plaintiff in error:

1. The deposition of Jefferson W. Oliver was improperly admitted upon the ground of interest, which is two-fold: First, as the vendor and warrantor of the property in dispute, without a sufficient release. Secondly, as a distributee of Robert W. Oliver, from whom he derived title. If this property is lost, the estate will be reduced and require a new division or contribution. As to the first ground—the sufficiency of the release produced—see 5 Ala. 508; 1 Greenl. Ev. 474, § § 428-'29-'30; Reading v. Metcalf, Hardins' R. 535.

2. The ruling of the court was wrong. The deed of Oliver, deceased, to Dent, was good between the parties and binding on those claiming under Oliver, as his heirs or distributees.—Rochell v. Harrison, 8 Porter, 351; Eddins v. Wilson, 1 Ala. 237; McGuire v. Miller, 15 Ala. 394; 18 John. R. 515; 1 Ohio R. 219; Carter v. Castleberry, 5 Ala. 277.

3. The purchase by the plaintiff below of the slave in question was not *bona fide* and for a valuable consideration—1st, Because he knew of the conveyance to Dent; 2d, The consideration of the purchase consisted of a portion of the slaves included in the same conveyance of Robert W. Oliver, deceased, to Dent, and to which plaintiff below claimed title through a distribution to himself and wife, of the estate of said deceased.

Peck, for the defendant:

1. The question made by the bill of exceptions is as to the sufficiency of the release and not the execution of it. If, however, the question of execution is raised by the exception, then I insist the execution is proved by the witness himself. He is asked, have you been released?—if so, attach a copy of it to your answer. He answers, I have been released, and the following is a copy thereof. This proves its execution. He does not pretend to judge of its sufficiency, but gives a copy that the court may judge of its sufficiency. The release, when delivered, belonged to the witness, and he properly kept it for his protection; it could not therefore be brought into court.

2. On the second point, I refer the court to the following authorities, to-wit: Eddins v. Wilson, 1 Ala. 237; Carter v. Castleberry, 5 Ala. 277-'79; Myres v. Peek's Adm. 2 Ala. 648-'59; McGuire Adm. v. Miller, 15 Ala. 395. These authorities show that the defendant being a *bona fide* purchaser, is not affected by the fact that he knew of the fraudulent character of the sale from Oliver to the plaintiff in error. He knew of the sale, but he also knew that it was void for fraud, and therefore he might well purchase. Again, Oliver died in possession, and there is no evidence that he obtained the possession wrongfully, after the pretended sale to the plaintiff in error. On his death it went lawfully into the possession of his administrators, and was distributed by the order of a competent court, who had jurisdiction of the matter. The party who thus lawfully received the slave under the order of distribution, might well sell and the defendant purchase without being affected by the fraudulent sale from the intestate to the plaintiff in error. One objection to the charge is, that it makes the notice of Portwood of the fraudulent sale from Oliver to Dent an important part of the charge. This would certainly have misled the jury. The charge, therefore, as asked, could not properly have been given, and so there was no error in rejecting it, and the charge was as favorable to the plaintiff in error as he was entitled to. Again, the bill of exceptions does not state that the only consideration given for the slaves by Portwood was slaves embraced in the bill of sale from Oliver to Dent. It states the consideration "was the share of the estate of the said Robert Oliver which on said administration had been allotted to him, *and of the slaves*

*included in the bill of sale to Dent.* The consideration, there-
fore, was his *share of the estate,* and of the slaves included in
Dent's bill of sale.

CHILTON, J.—This was an action of detinue brought by
the defendant in error against Dent to recover a slave named
Daniel. Plea *non detinet,* and verdict and judgment for the
plaintiff below. Upon the trial below plaintiff proved that the
slave sued for had been formerly owned by one Robert Oliver,
who died in Texas; that his estate was administered upon, and
that upon a division of the same said slave was allotted to one
Jefferson W. Oliver as an heir or distributee of said estate, and
sold by him to the plaintiff. The plaintiff below, as we are in-
formed by the bill of exceptions, in making this proof offered
to read to the jury the deposition of Jefferson W. Oliver, his
grantor, and the defendant having properly reserved his objec-
tion to the examination of the witness, on the ground of interest,
insisted upon that objection in the Circuit Court. The deposi-
tion shows that after the witness had been examined as to his
acquisition of the property upon a distribution of his father's
estate, and his sale of the slave to the plaintiff, the witness pro-
ceeded to prove his want of interest in the following manner—
To the question propounded by the plaintiff, "Have you been
released by the plaintiff, Robert Portwood, from all liability to
him as the warrantor of the title to said slave,—If so, then at-
tach a copy of said release to your answer to the question?"
The witness answered, "I have," and here follows a copy of
the release, setting out a formal release to him from Robert
Portwood, of and from all liability by reason of his sale and
warranty of the slave in suit. The court overruled the objec-
tion made by the defendant to the deposition, and held that the
witness was not interested. It is here insisted, first, that the wit-
ness had such interest as could not be released, for the reason
that if the plaintiff below failed to recover, the estate of Robert
Oliver must sustain the loss, and each distributee among whom
it had been apportioned must contribute ratably to the loss.
This view cannot be sustained, inasmuch as the witness, if the
release be effectual, is discharged from all liability. The failure
of Portwood's title cannot injuriously affect him, for he has re-
ceived compensation to the value of the slave, which he is enti-

tled to retain, and Portwood cannot claim contribution from the estate, since there is no privity between it and him in respect of this slave.　He must look alone to his immediate vendor, whom however he has discharged, if as we have said the release be well proved.　But it is said the release does not render the witness competent, because it was not legally shown by the deposition to have been executed, and to this it is replied that no question was raised in the court below as to the sufficiency of the proof of its execution.　The objection to the deposition was, that it showed the party was interested.　This objection goes to the whole deposition and presents the question whether taking it as we find it embodied in the bill of exceptions, the witness is shown by it to have been released.　If he was not, it should have been rejected by the court.　Is the effect of the release thus proved to destroy the witness' interest and restore his competency?　In this inquiry is involved the competency of the witness, confessedly interested without a release, to prove his discharge from liability, and thus by his own proof to render himself competent.　Upon this point, we confess the case is not free from difficulty.　The general rule, as stated by Professor Greenleaf, is, that where the objection to the competency of the witness arises from *his own examination*, he may be further interrogated as to facts tending to remove the objection, though the testimony might on other grounds be inadmissible.　So, where the whole ground of objection comes from himself only, what he says must be taken together as he says it.　If his interest appears from his own testimony to arise from a written instrument which is not produced, he may also testify to the contents of it:　And the same learned author states that although the witness may as a general rule, when called upon to testify in court as to his interest, give the contents of contracts, records, &c., affecting his interest, yet "if the testimony of the witness is taken upon interrogatories in writing previously filed and served on the adverse party who objects to his competency on the ground of interest which the witness confesses, but testifies that it has been released, the release must be produced at the trial, that the court may judge of it."—1 Greenl. Ev. § 423, p. 572, (3d ed.)　In Goodhay v. Hendry, 1 Moody & Malkin, 319, it was held that the bankrupt was not a competent witness in an action brought by his assignees, without his certificate and release

are produced, or their non-production accounted for.—See, also, the note appended to the above case, reported in 22 Eng. Com. L. Rep. 322, where it is said, quoting the language of Mr. Phillips, that " If the opposite party raise the objection of interest by independent evidence, and without putting a question to the witness, then the party who has called him cannot be allowed to put a question to him in order to repel the objection; but when the objection arises from the answer of the witness upon his *voir dire*, it may be likewise removed on the *voir dire*." In Evans v. Gray, 1 Mar. Lou. Rep. 709, upon the question whether the witness may by his own oath establish his competency, the court say, " The general doctrine is, that where the objection relied on is drawn from the witness by the examination of the opposite party, it may be removed by the same means it is created; and that the witness may testify to other facts which will do that objection away, even to the contents of a written release, and the court vindicate the good sense of the rule by the argument, that " if the person testifying is honest enough to state the objection, he may be confided in to explain how it has ceased." In such cases the objection would come upon the party oftentimes by surprise, and it is indispensable to the convenient administration of justice that the witness having testified to his interest, should be allowed to prove his competence. But, on the other hand, it was said that if the interest of the witness was established *aliunde*, and particularly by the very instrument on which the suit was brought, and the party was apprised months before the proof was taken or the trial gone into, that the objection would be made, " we think it would be contrary to principle and quite unsafe in practice to permit a witness who was *prima facie* incompetent to do away that incompetence by his own declaration. There is just as much danger in permitting him to testify to that fact as to any other in the cause, and if he can be relied on to tell the truth, whether he has been released or not, he may be as safely depended on to give evidence in chief, without inquiring of him whether he be competent."—See, also, 4 Serg. & Rawle's Rep. 298; 17 Maine Rep. 429. In the case last cited (Hobart v. Bartlett) the witness answered that he had been released and had no interest in the cause, but the court said, " When the interest is apparent and it is proposed to discharge it by release, the court

must judge of its sufficiency." They say further, that it is the duty of the court to decide upon the sufficiency of the release and its due execution, and not the witness.—Per Whitman, C. J., in Southard v. Wilson, 21 Maine Rep. 494; 2 Phill. Ev. C. & H., notes 260, n. 256. The facts of the case of Southard v. Wilson bear a striking analogy to those in the case under consideration. That was an action against the endorser of a note. The deposition of the maker for whose accommodation it was endorsed was offered as evidence by the defendant to prove payment, and the interrogatory propounded to him in chief was, " has or not said defendant given to you a receipt and discharge in full from all liability on account of said note?" To which the witness answered, " He has, prior to my former deposition, and has now given me another, and the following is a true copy of the same." He then sets out a copy of the release, yet the court held the witness incompetent on the ground of interest, as he could not by his own testimony remove the objection under the circumstances of that case. In the case at bar the plaintiff claims title through Jefferson W. Oliver, and to have purchased by bill of sale with warranty as to the title. This is assumed by the interrogatories which they exhibit, and must have appeared in deducing his title to the slave. The witness then, clearly appearing to be interested, was according to the cases above refered to incompetent to remove the objection, but the release should have been produced and proved to the court. This seems to have been the practice in this State. Brown v. Brown, 5 Ala. 508; Kyle & Gunter v. Bostick & Sherrod, 10 Ala. 589. The case of Herndon v. Givens, 16 Ala. 261-'9, shows that if the interest is disclosed upon the *voir dire*, the witness may discharge himself in the same way, and to this end may give the contents of written instruments without their production or accounting for their loss. We have thought it due to the practical importance of this point to dwell somewhat at length upon it. I am aware that some of the English cases favor a different view.—See Carlisle et al. v. Russel, 1 C. & P. 234; Perryman v. Steggall, 5 C. & P. 197; but these cases do not appear to have received much consideration. Our conclusion is that the deposition of Oliver should have been rejected upon the ground that his interest was not removed by his own proof, and that the court below erred in permitting it to be read.

Dent v. Portwood.

In respect to the charge asked and refused by the court, the bill of exceptions shows that it was abstract, and for that reason, as we must intend, it was denied by the court.   If the entire consideration for the purchase of this slave by the plaintiff of Jefferson W. Oliver consisted of the portion of Robert Oliver's estate which had been allotted to the plaintiff, and that portion was composed exclusively of property fraudulently conveyed by the intestate in his life-time to Dent, and this was known to the plaintiff, as the charge assumes, then it would follow that as one portion of the property so conveyed to Dent had been exchanged for another portion similarly situated, the title would in no wise be affected by the transfer; for it is a point which the decisions of this court place beyond all controversy, that a fraudulent deed is valid as against the grantor and cannot be defeated by a subsequent vendee whose purchase was conceived in fraud.—Rochelle v. Harrison, 8 Por. Rep. 351; Eddins v. Wilson, 1 Ala. 237; McGuire,.adm. v. Miller, 15 Ala. 394.   The vendee of the property from the fraudulent vendor must be a *bona fide* purchaser in order to defeat the title of the fraudulent prior vendee.—Carter v. Castleberry, 5 Ala. 277.   We need hardly add that after the death of the maker of the fraudulent deed his representatives and those coming to the succession can take no greater interest than he had himself: such is the abhorrence which the law has for fraud.   The bill of exceptions, however, shows that the consideration for the purchase by Portwood of Jefferson Oliver was the exchange of the portion alloted him as a distributee of Robert Oliver's estate, and of the slaves embraced in the bill of sale from said, Robert to Dent.   Now whether the estate which was alloted him aside from his portion of the slaves, was conveyed likewise to Dent, is a question upon which the bill of exceptions is silent, and as it is incumbent on the party excepting to set out sufficient of the proof to show that the charge which he asks of the court is not abstract, and as every intendment is to be made in favor of the regularity of the proceeding in the court below, we conclude that what the bill of exceptions fails to show does not exist, and construing the exceptions most strongly against the party excepting, we are bound to infer that the charge refused was without proof to warrant the court in giving it, and was therefore properly refused.—Keath v. Patton, 2 Stew Rep.

38; Holmes v. Gayle et al., 1 Ala. 517; Stone v. Stone, ib. 582; Mallory v. Stodder, 6 ib. 801.

For the error above noticed, the judgment must be reversed and the cause remanded.