DILL, GUARDIAN, &c., vs. CAMP.

1. The failure of the commissioner to date his certificate is not a valid objection to the admission of the deposition.

2. Where a deposition is returned to the clerk by the hands of a private person, it is not incumbent on the party offering it to prove that he was disinterested.

3. The objection to a deposition that there was no notice of the time and place of taking it, cannot be raised for the first time in the Appellate Court.

4. When a deposition is taken *de bene esse*, at a time and place specified in the commission, it cannot be excluded because the commissioner returns with it a list of interrogatories, not signed by counsel, which were not filed in the clerk's office, and a copy of which was not served on the opposite party.

5. A deposition may be taken at any time during the term of the court to which the commission is returnable, before the case is called for trial in which it is to be used.

6. A party who seeks the rescission of a contract on the ground of fraud must act with vigilance and promptness on the discovery of it, by an offer to return the property within a reasonable time, if the parties live at a distance from each other; or by an actual redelivery of it, or a tender with a view to a redelivery, if they reside near each other, and the property is susceptible of easy transportation.

7. If the vendee retains the possession of the property, after an offer to return, or a tender with a view to redelivery, he is merely the bailee of the vendor, and must avoid the use or employment of the property in any manner inconsistent with the vendor's rights.

8. These rules apply with equal force to contracts of hire.

9. The Appellate Court is not authorized to construe a charge with direct reference to the weight of evidence, but is limited to an examination of the propositions of law contained in it in reference to the subject matter of the evidence, looking only to see if there is any evidence to support it.

10. When the defendant's entire defence depends upon the existence of four distinct facts, a charge which makes it depend upon the existence of three of those facts only, is erroneous.

ERROR to the Circuit Court of Talladega.

Tried before the Hon. EZEKIEL PICKENS.

This was an action of ASSUMPSIT by the plaintiff in error against the defendant in error, on a written contract, of which the following is a copy: "On the 25th day of December next, we, or either of us, promise to pay to Andrew Dill, guardian of John Goodwin, minor heir of Thomas Goodwin, deceased, the sum of one hundred and twenty-five $\frac{50}{100}$ dollars, it being for the hire of two negro boys, Carter and Alexander, which

17

I promise to feed with good and wholesome diet, and furnish two good cotton and one woollen suit of clothing, one blanket, hat, two pair of shoes, and pay their taxes; this 27th day of Dec., 1848.

J. CAMP,<br>
JOHN BELL,<br>
B. F. BURNES.

(Signed)

The plaintiff declared upon the above instrument, and added also the common counts.

The defendant pleaded *non assumpsit*, want of consideration, and failure of consideration.

On the trial a bill of exceptions was allowed, from which it appears, that the plaintiff offered in evidence the above described instrument, proved that the negroes went into the possession of the defendant according to the tenor thereof, and then rested his case.

The defendant offered to read in evidence the deposition of one John Mackey, to which the plaintiff objected, because the certificate of the commissioner bears no date, and because the person who received the deposition from the commissioner and delivered the same to the clerk, does not swear in his affidavit that he is a disinterested person. The court overruled the objection, and allowed the deposition to be read; to which the plaintiff excepted.

The defendant then offered to read the deposition of one Samuel D. Lassiter, to the reading of which the plaintiff objected, on the ground that the commission was issued on the 5th day of November, 1851, and executed, according to the caption of the deposition, the next day, the certificate of the commissioner having no date; and because there were interrogatories addressed to said witness appended to said deposition, and returned into court with the same, which interrogatories had never been filed, and of which plaintiff had no notice. The court permitted the deposition to be read, to which the plaintiff excepted.

The defendant then offered to read the deposition of one Polly Rodgers, to the reading of which the plaintiff objected, on the ground that the commission to take said deposition was returnable to the Circuit Court to be holden on the first Monday in May, 1851, was issued on the 4th day of April,

1851, and executed, according to the certificate of the com-missioner, on the 9th day of May, 1851, and after the com-mencement of the said May court. The court allowed said deposition to be read, to which the plaintiff also excepted.

The witness, Mackey, testified, that he was present when the hiring took place, and that the boy Alexander was rep-resented to be a good plow-hand, and that he had been plow-ing for two or three years.

The witness, Lassiter, testified, that he was the overseer for the defendant during the year 1849, and had said negroes under him as defendant's overseer; that Aleck staid all the year, and Carter some four or five weeks, and then ran away and returned no more. The boy Aleck could not plow, was but an indifferent hoe-hand, and greatly lacking in intellect; as witness supposed, was more trouble than his work was worth. Knew nothing about defendant's offering to return the negroes, except what defendant told him.

Polly Rodgers testified, that, in a conversation with John Goodwin, jr., about a negro called Carter, which was hired to defendant, said Goodwin said that the negro had been whipped, and he should not go back to defendant; said Good-win was a man of family, and had married plaintiff's daughter.

There was further evidence tending to show that the boy Alexander was a negro of dull intellect, not a good plow-boy, though a tolerable hoe-hand. It was in proof that the other boy, Carter, was a good plow-boy; that he ran off from de-fendant, and that defendant, some time afterwards, the pre-cise time not stated, went to see plaintiff and offered to give him back the negroes; that plaintiff told him he would see his ward, Goodwin, who had taken the control of the matter, and let defendant know the determination as to the tender; that defendant told plaintiff that the boy Alexander was an idiot, and that the other boy, Carter, was in the woods; that nothing more was said or done about the matter. The proof showed that defendant kept the boy Alexander the whole year at work for him, and that neither plaintiff nor his ward had the possession or control of the boy Carter during that year. There was a good deal of conflicting proof as to the mental capacity of the boy Alexander and his qualities as a

field hand, but none as to the capacity of the boy Carter. There was evidence tending to show that said Goodwin had become of age during the year, and harbored the boy Carter.

Upon this evidence, the court charged the jury: "If they believe from the evidence that plaintiff represented the boys Carter and Alexander, at the hiring, to be good plow-boys, and that the boy Alexander was not a good plow-boy, though a good hoe-hand, and that the plaintiff knew at the time that Alexander was not a good plow-boy, that then he could not recover for either of the boys, or anything for both of them, if an offer to rescind had been made in due time and refused."

The court also charged the jury: "If they believed from the evidence, that plaintiff, after the hiring, gave up the matter to his ward, Goodwin, that Goodwin used means to prevent the boy Carter, that had ran away, from returning to defendant, and that the boy Alexander was not a good plow-boy, that the plaintiff could not recover any thing, if an offer to rescind had been made in due time and refused."

To each of the above charges the plaintiff excepted, and here assigns for error the admission of the above mentioned depositions, and the charges of the court to the jury.

JONES & BOWIE, for plaintiff in error:

1. The deposition of John Mackey was to be taken "at the house of John Mackey, in Talladega county, on the 13th of May, at 8 o'clock, a. m., of said day, and six hours' notice of time and place was to be given." The certificate of the commissioner does not show that it was taken at that time and place, nor is there any evidence that the notice was given. The caption of the deposition shows it was taken on the 13th of May, but where, or within what hours, does not appear. The witness was not cross-examined. The deposition should have been excluded from the jury. See Acts of 1849–50, p. 74 § 3 ; Parsons v. Boyd, 20 Ala.

2. The same objections apply to the deposition of Samuel D. Lassiter, with the addition that written interrogatories were filed and answered by him, which were never served on the plaintiff at all, and of which he had no notice; and these interrogatories were found in the deposition. It ought not to have gone in evidence.

3. The commission to examine Polly Rodgers, was returnable to the May term of the court, 1851; and it was not executed until the 9th day of May, 1851. This was fatal, and the deposition should not have been admitted as evidence. Herndon v. Givens, 16 Ala. 262; Jordan v. Jordan, 17 Ala. 466.

4. The contract sued on was made with Dill, as guardian. It is sued on by him as such, and the acts of the ward could not defeat his rights in the premises; otherwise, the whole estate might be taken out of his hands, without a final settlement with him. The guardian had the right to sue on this contract in his own name. Cox v. Williamson, 11 Ala. 343; Bowie v. Minter, 2 ib. 406; Tate, guardian, v. Gilbert, 5 S. & P. 114; Curry & Co. v. Paine, 3 Ala. 154; Peters v. Hydenfeldt, 3 ib. 205.

5. The proof does not show that either of the negroes was tendered back within a reasonable time; there was an offer to rescind, but the "precise time of it is not shown," neither is it shown about what time it was made. It was after the hiring, and that is all that can be said about it; yet, the court charges the jury as though this proof had been made. This was error; and both charges are objectionable on account of it. 2 Ala. 199; Brinley v. Tibbats, 7 Greenl. 7; Floy v. Dryden, 7 Pick. 52.

6. The second charge is objectionable on another ground: it treats the acts of the ward as though they were done by plaintiff; this, as to acts before he was of age, is clearly erroneous. Jackson v. Sears, 10 John. 435; Lay v. Barnes, 4 S. & R. 112; Foster v. Fuller, 6 Mass. 58–9; Jones v. Bowen, 1 Pick. 314, 317; Macher v. Dinsmore, 5 Mass. 300; Foster v. Fuller, 6 ib. 58.

7. But a party may waive his right to rescind, by keeping possession of the property and using it as his own, or as his hired property. See Barnett v. Stanton & Pollard, 2 Ala. 199. This was done by Camp in this case. He kept the boy Alexander at work on his farm the whole year. He took possession of the other boy, Carter, at the same time, and kept him for some time; and that he then ran away from him, is not disclosed by the evidence, except in the deposition of Polly Rodgers, and she was impeached by a large number of witnesses.

Rice & Morgan, *contra :*

The deposition of Polly Rodgers, although copied in the record, is no part of the record or of the bill of exceptions; the bill of exceptions does not mention or refer to it as any part of the bill of exceptions, and this court will not regard it as a part thereof, but will strike it out on defendant's motion, which is made to strike it out. Br. B'k. at Decatur v. Mosley, 19 Ala. 222.

But even if the court could regard it as part of the bill of exceptions, this court is not authorized to say the court below erred in admitting said deposition, because it is manifest from the bill of exceptions that the court below did not base its action upon the face of the deposition alone, but also upon parol evidence, which is not set forth in the bill of exceptions; and this court will presume that this parol evidence justified the action of the court below. Rives v. McClosky, 5 Stew. & Port. 330; Holmes v. Gayle, 1 Ala. 517; Cobb v. Miller, 9 Ala. 499.

The charges of the court are correct, for they assert but the well settled rule of law, that a purchaser of property who has been defrauded, may, upon the discovery of the fraud, rescind the contract, by offering to rescind within a reasonable time. A hiring of slaves is a purchase for the term of hire. Barnett v. Stanton & Pollard, 2 Ala. R. 181, 195.

An offer to return the chattel in a reasonable time, on the breach of a warranty, or where a fraud has been practiced on the purchaser, is equivalent in its effect upon the remedy to an offer accepted by the seller, and rescinds the contract. 2 Ala. 189. Hopkins v. Appleby is quoted by the court, not because they approved the principle decided by it, but merely to show that the purchaser must act promptly on the discovery of the fraud. 2 Ala. R. 189. The meaning of all which is this : that the purchaser must not, by his conduct of omission or commission, before he makes his offer to rescind, so alter circumstances that the parties cannot be placed in *statu quo ;* he must not have sold any of the goods before his offer to rescind, as the purchaser had done in Barnett v. Stanton, 2 Ala. Rep. 195. But if, as supposed in the charge in the present case, the offer to rescind is made in due time and refused, the contract is thereby rescinded.

The great inquiry in all such cases is, was the offer to rescind made in due time? And that is "a question for the jury under the circumstances," as the court expressly say, in Barnett v. Stanton, 2 Ala. 195; 3 ib. 702–3.

The charge of the court contains a correct proposition of law; and if the plaintiff wished other charges, he should have asked for them. This court would presume he did so, and that they were given. Magee v. Bellingley, 3 Ala. R. 702–3; 2 ib. 752; Elliott v. Boaz, 9 Ala. 772; Borum v. Garland, 9 ib. 452.

What effect the retaining possession of one of the slaves by defendant after his offer to rescind was made, may have had, is a question not raised on the record by any charge asked or given. But if the offer to rescind was made in due time, that operated a rescission; and if the defendant kept either slave afterwards, the plaintiff should have brought trover for the slaves. Pharr v. Bachelor, 3 Ala. 237.

GIBBONS, J.—The objection to the admission of the deposition of the witness Mackey cannot prevail. The act of 1850 prescribes, that, when a deposition is taken, "the commissioner shall, under his hand and seal, below the testimony, or on some convenient place in the papers, certify to the clerk of the proper court, or to the justice, that the evidence of the witness or witnesses was taken down under oath, and subscribed by him in his presence, at a time and place appointed by him, (specifying them,) if by interrogatories, if without, at the time and place specified in the commission; then enclose the whole in a compact form, sealed with three seals, with his (or their) name written across each; state the names of the parties or the cause on the outside of the envelope, and address the package to the clerk, or the justice aforesaid, and forward it; if by mail, mark it on the outside, mailed, and the date; if by private disinterested conveyance, mark on the outside by whom, and in either case the date, and sign his name. The clerk or justice, on receiving it, shall mark on the back how and when received, and file it; and the testimony thus received and regularly opened, shall be read in evidence." From this recital of the statute it will be perceived, that it is not required of the commissioner to date his

own certificate; he is required to certify that the testimony, if taken without interrogatories, was taken at the time and place specified in the commission. This the commissioner does in the present case; and if we were to hold that he must also add a date to the certificate, we should be superadding to the statute a requirement not placed there by the legislature. Neither can the objection prevail, that "the person who received the deposition from the commissioner, does not swear that he is a disinterested person." It appears that, when the above named deposition was delivered to the clerk, it came by the hands of one Samuel D. Lassiter, and the clerk on its receipt administered to him an oath as follows: "Came before me, Samuel D. Lassiter, and made oath that he received this package from the hands of the commissioner, and that it has not been out of his possession since he received it, nor undergone any alterations or erasures."

We have only to remark, that we see no requirement of such an affidavit in the act above cited. This act seems to recognize two modes of conveying depositions from the commissioner to the place where they are to be used: one by mail, and the other by private disinterested conveyance; but this clause of the act we regard as directory merely, and it is not to be construed to mean that the party offering a deposition should show, as a condition precedent to its competency, when the deposition has been returned by private conveyance, that the bearer of it was a disinterested person. If the proper construction of the statute was, that when the deposition was returned by private conveyance, it must be by a disinterested person and none other, we should hold that this would be presumed, until the contrary appeared. Otherwise, it might often be extremely embarrassing for the party offering a deposition to pave the way for its competency. It might be returned to the clerk by an entire stranger to the party, and in that case, in addition to requiring him to prove a negative, he would be called upon to prove one in reference to a person of whom he knew nothing. The showing made in the present case, we consider ample for the admission of the deposition. The objection that there was no evidence of notice to the opposite party, of the time and place of taking the deposition, cannot be here considered, as it was

not made in the court below. An objection of this kind cannot be made in this court for the first time.

The decision of the questions in relation to the deposition of the witness, Mackey, necessarily disposes of the same objections made to the reading of the deposition of Lassiter. But it was further objected to the reading of the latter deposition, that a list of interrogatories appears therein, a copy of which was not served on the plaintiff or his attorney. These interrogatories do not appear to have been filed in the clerk's office before the commission issued, nor does it appear who framed them. They are not signed by counsel or by any one else, and must be regarded as mere memoranda made by the commissioner, or by some other person for his use. However this may be, they afford no good reason for excluding the deposition. The commission was issued to take the deposition of the witness *de bene esse,* a time and place specified to execute it, and the plaintiff notified according to the order of the clerk. It was the plaintiff's privilege to be present at the taking of the deposition; and if he chose to waive his rights and not attend, he cannot exclude it, unless he shows something clearly illegal in its execution.

The objection to the reading of the deposition of Polly Rodgers is, that the office of the commissioner had expired before the deposition was taken. The commission was issued on the 4th day of April, 1851, and was returnable to the next term of the court to be held on the first Monday of May thereafter. The deposition purports to have been taken on the 9th of May, 1851. In the case of Herndon v. Givens, 16 Ala. 261, it was decided, that a deposition taken on the second day of the term of a court to which the commission was returnable, could not be read, as the authority delegated to the commissioner to take it had then expired. On the other hand, in Jordan v. Jordan, in 17 Ala. 466, a deposition taken on the first day of the term to which the commission was returnable, was held good, on the ground that the authority to the commissioner had not then expired. Of these two decisions we prefer the latter, as we apprehend the true rule to be, that, under a commission returnable at a particular term of a court, a deposition may be taken at any time during the term, before the case in which the testimony is to

be used is called for trial.   Under this  rule, the objection to
the deposition under consideration fails, and  it was  properly
admitted.

It is undoubtedly true, that when  two  parties contract to-
gether and one  defrauds the  other, the  party defrauded has
the right to rescind the contract.   A rescission in such a case
may be effected by operation of law, if he who seeks it does
what the law requires of him.   When a contract is  thus re-
scinded, the  parties, in  contemplation of law, are  placed  *in
statu quo*, and the law will not operate a rescission unless this
can be done.   The party seeking a rescission for fraud, there-
fore, should act with vigilance and  promptness.   As soon as
he discovers the  fraud, he  should  immediately act  upon it,
and take those measures which  the law makes it his  duty to
take, in order to put an end to the contract.   Barnett v. Stan-
ton & Pollard, 2 Ala. 181.   In the case cited, says chief jus-
tice Collier:   "But the vendee in  such  case  must act with
promptness, and upon discovering that the subject is not such
as was contemplated, he must offer to  return it."   Again, he
says in the same case:   "But a contract cannot be rescinded
without mutual  consent, where  circumstances have been so
altered by a part execution, that the  parties cannot be put in
*statu quo*, for if it be rescinded at all, it must be  rescinded in
*toto*."   Hunt v. Sylk, 5 East 449.   "If the vendee neglect
to return goods immediately upon  discovering a  breach of
warranty or fraud, but keep them and treat them as his own,
by putting them up to sale, or exercising other acts of own-
ership over them, he cannot afterwards  reject the contract."
Parker v. Palmer, 4 B. & A. R. 387.   Again, in  Burton v.
Stewart, 3 Wendell 236, it is said, that  "fraud in  the sale of
a chattel cannot be set up in bar of a recovery of  the amount
of a note given on such  sale, unless  the vendee, on the dis-
covery of the fraud, return the articles purchased to the ven-
dor, or show them to  be  entirely destitute of value.   If the
vendee retain the property, he cannot treat the sale as void."
It is the vendor's right to know at as  early a  day as practi-
cable, consistently with ordinary vigilant and  prompt action,
whether the vendee intends to retain the  article or not.   He
has a  right to  know this, because, if the  contract  is  to be
rescinded, the parties are to be  placed *in statu quo;*  and the

vendor is not to be kept out of the possession of his property, the title to which necessarily goes back to him when the contract is rescinded.

Again, it is said: "An offer to return the chattel in a reasonable time, on the breach of a warranty, or where a fraud has been practiced on the purchaser, is equivalent, in its effect upon the remedy, to an offer accepted by the seller, and the contract is rescinded." Barnett v. Stanton & Pollard, *supra.* This is undoubtedly true in a great variety of cases, and would be true in all, if by offer to return was meant an actual tender of the property back; for the vendee cannot force the vendor to receive the property, even though he tender it to him, and when he makes the tender, he does all that the law requires of him. But when the parties reside in close proximity to each other, and when the property is susceptible of easy transportation, we apprehend that the law requires something more than a mere offer to return the chattel unaccompanied by a tender of it. The law contemplates in such cases an actual re-delivery of the property to the vendor, or a tender of it with a view to re-delivery. Where the parties reside at a distance from each other, a simple offer to return would doubtless be all that the law requires. But in all cases where the offer to return the property is made with a view to a rescission of the contract, the vendor must be apprised that the title has re-vested in him, and that the property is subjected thenceforward to his order and control. A party cannot in a court of law rescind a contract, and yet retain the possession and use of the subject matter of it, as if it were still his. In cases where parties reside at a distance, after the rescission has been effected by an offer merely to return the property, the vendee, if he retains the possession, can only do so as the bailee of the vendor, until he can receive the orders of the latter as to what disposition he shall make of it. But he can exercise no control or dominion over the property himself, as being the rightful owner. So, where the contracting parties reside in the same neighborhood, the vendee, if he would avoid the contract, after he has tendered the property .back, must avoid the use or employment of it in any manner inconsistent with the rights of the vendor. There may be cases where the vendee's possession of the property,

after such rescission, may be consistent with the title of the vendor. Such cases arise when the vendor has refused to receive it, on its being tendered to him, and when it would be inhumane or greatly prejudicial to the interests of the parties concerned entirely to abandon it; or where, on an offer to return without a tender, the vendor has notified the vendee that he would not receive the property back and rescind the contract. This would be a waiver on his part of the tender, and the law will not require the vendee to do a useless thing, as an actual tender of the property would be, after he was thus notified that it would be useless.

The rules which we have thus laid down are those which obtain mostly in reference to sales, but we apprehend that the same will apply with equal force to contracts for hire.

We have deemed it necessary to be thus explicit in stating these rules of law, in order to arrive at the proper tests by which to determine the correctness of the charges of the court below to the jury.

In the first, the court asserted, in effect, that if there was fraud in the hiring of the negroes to the defendant, in falsely representing them to be what they were not, and if the defendant offered to rescind the contract in due time, and that offer was refused, then the plaintiff could not recover. We cannot say that this charge contains any positive error for which we feel bound to reverse the case. It certainly would have been more accurate, and better calculated to have reached the justice of the case, if it had been more specific.

We observe of this, as well as of the second charge, that the question of due time is left entirely to the determination of the jury. The question as to what is a reasonable time within which to make the offer to rescind, or tender back and restore the property, is one necessarily compounded of law and fact; of law, so far as regards laying down the rule governing the particular facts in evidence; of fact, so far as regards the question whether the particular facts fall within the rule laid down. It would undoubtedly have been more accurate if the court had instructed the jury as to what was due time; as for instance, that the defendant was required to act with vigilance and promptness on the discovery of the fraud, and then left them to say whether the facts brought the case

Dill, Guardian, v. Camp.

within the rule or not. In that case, there would or would not have been a rescission, according as the jury should have found. But the charge as it stands asserts no false proposition; the objection to it is its generality. It was the plaintiff's privilege to have had a more specific charge given, and if he had wished it, should have prayed one more appropriate. So in reference to that part of the charge relating to the offer to rescind; although extremely vague and indefinite, still, we cannot say that it contains positive error. Whether it meets the weight of evidence in the case or not, as shown in the bill of exceptions, is a very different question. We are not authorized to construe the charge with direct reference to the weight of evidence, but are limited in our examination to the propositions of law contained in the charge in reference to the subject matter of the evidence, looking only to see if there is any evidence to support it. If the plaintiff does not ask the charges more appropriate to the proof, and leaves the affirmative charges to stand alone before the jury, although he may except to them, still, we cannot revise the case, unless the charges announce some erroneous proposition of law.

This view of the first charge necessarily disposes of the second, so far as regards the question as to the offer to rescind and the time when it was made. This charge seems to have been given with a view to meet a set of facts not covered by the first, tending to show an interference on the part of Goodwin, the ward of the plaintiff, in preventing the boy, Carter, from returning to the service of the defendant. In this part of the charge there was no error. If the plaintiff chose to abandon the matter to the control of Goodwin, he thereby made him his agent, and became liable for his acts. If Goodwin harbored the boy, Carter, and prevented him from returning to the defendant, and this interference on his part was with the consent or permission of the plaintiff, he would be chargeable with it; and the defendant, in that case, would have the right, without any offer to rescind, to consider the contract at an end, so far as this boy was concerned, from the time such interference commenced. This, however, as an entire, independent and affirmative charge, cannot, in our opinion, be sustained. The jury are

told, that if they believe, from the evidence, that the boy, Alexander, was not a good plough boy; that Goodwin, with the consent or permission of the plaintiff, harbored the boy, Carter, and prevented him from returning to the defendant's service; and that an offer to rescind was made in due time, and refused, then the plaintiff cannot recover. Here the entire defence is made to depend upon three facts only, viz: that Alexander was not a good plow boy; that Goodwin interfered to keep the boy, Carter, away; and the offer and refusal to rescind. In this charge, the entire question of fraud in the contract, on which the whole defence, so far as it seeks a total defeat of a recovery, rests, is omitted. Independent of any question of fraud in the contract, the jury are told, if they find the three facts above named to exist, then there can be no recovery. This, in reference to the evidence, is an erroneous charge. We have no doubt that the court, in giving the charge, intended to be understood as including in it the question of fraud, as it had in the first charge; but the jury may not so have understood it. The charge, to say the least of it, falls within that class obviously tending to mislead the jury, and which the court will not sustain. Nabors v. Camp, 14 Ala. 460; Toulmin v. Lesesne & Edmondson, 2 Ala. 359; Cothran v. Moore, 1 Ala. 423; Sims v. Sims, 8 Porter 449.

For this error, the judgment of the court below is reversed, and the cause remanded.