## VARN v. GONZALES. (No. 152–3114.)

(Commission of Appeals of Texas, Section B. June 16, 1920.)

1. **Vendor and purchaser** ⚫⇒214(1)—**Assignment of option contract held fraudulently induced by secret agreement.**

There can be no recovery on notes given for assignment of option contract to convey land in Mexico, where valuable timber on land not on tract was represented to be on land sold, and there was a failure to point out when land was inspected that great areas of the land were gorges and canyons, and two of the makers of the notes coming from the states were represented by Mexican interpreters, who became their agents and partners, and they entered into a secret understanding with assignor that the amount they became liable for as parties to the contract need not be paid, as in such case contract is absolutely void.

**2. Vendor and purchaser ⬧⟹214(1)—Fraudulent assignment of option contract not subject to ratification.**

An assignment of an option contract to purchase land, having its inception in fraud, is not subject to ratification.

**3. Vendor and purchaser ⬧⟹214(1)—Fraudulent assignment of option contract, promptly repudiated, not ratified.**

Where two makers of notes given for option to purchase Mexican land on discovery of a secret agreement of Mexican cosigners with assignor to defraud them promptly repudiated the contract, and tendered back the property, which was refused, they did all that was required of them, and no ratification could take place.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by Amador Gonzales against Geo. W. Varn, administrator, and others. From a judgment of the Court of Civil Appeals (193 S. W. 1132), affirming a judgment for plaintiff, Varn brings error. Reversed, and judgment entered for defendant.

M. W. Stanton and Turney & Burges, all of El Paso, for plaintiff in error.

F. G. Morris, B. Bryan, and T. A. Falvey, all of El Paso, for defendant in error.

KITTRELL, J. This case is reported in (Civ. App.) 193 S. W. 1132. The opinion to be there found will reveal the character of the case, and the defense interposed.

In order, however, to make our opinion complete within itself, we will, as briefly as possible, summarize the controlling facts.

### Statement of the Case.

In the summer of 1908 three Mexican ladies living in the state of Durango gave to Amador Gonzales, a Mexican resident in the state of Chihuahua, a verbal promise or option to sell him for 35,000 pesos, equivalent to $17,500 gold, a body of land comprising about 45,000 acres situated in the state of Durango. On September 17, 1908, Gonzales entered into what was termed a minuto de contracto, or memorandum of a contract, with one Fulkerson, a resident of El Paso, Tex., whereby he assigned to Fulkerson all the rights he (Gonzales) possessed under the "promise" of the Chavez sisters. Fulkerson had been co-operating with Gonzales to find a purchaser for the land, and the jury found he was the agent of Gonzales.

Some time in the summer of 1908 there came to El Paso from Georgia two brothers, W. W. and G. C. Varn, who it appears had, or were able to control, capital, which they desired to invest in Mexican timber lands. They could not speak the Spanish language, nor understand it when it was spoken, and for that reason engaged one Numa G. Buch-

oz, and one Bernard Schuster, land agents and brokers, to represent them. Buchoz and Schuster and Fulkerson had offices near each other, and all three acted as interpreters and agents of the Varns, and later became their partners.

Some time in August, as nearly as the date can be arrived at from the statement of facts, the Varns and their interpreters and agents and Gonzales, six in all, went, at the expense of the Varns, to inspect the lands, which were bounded on one side for a long distance by land owned by one Shaw. The Varns were shown timber on the Chavez lands, and were shown also, either by mistake or designedly, it appears designedly, much timber of the finest quality as being on the Chavez land, but which was in fact on the Shaw land, and large areas of the Chavez land, which was intersected by inaccessible gorges and canyons, were not shown the Varns at all.

As has been said, the Varns could neither speak nor understand Spanish, and were wholly dependent on Fulkerson, Buchoz, and Schuster for information about the land, and believed the land belonged to Gonzales. After the inspection had been made Gonzales on September 24, 1908, in the city of Durango made a contract with the Chavez sisters, by which they agreed to sell to him, or any person he might designate, their land, which contract was termed an "option or promise of sale," and which was to expire November 4, 1909. The price was to be 35,000 pesos, payable when Gonzales made a deed. Gonzales bound himself to pay semiannually, 1,500 pesos, interest on a mortgage on the land. He was given the right to cut timber paying 100 pesos a carload. If he did not effect a sale, all payments and all machinery put on the land were to revert to the Chavez sisters. Five days later in the city of Juarez, Mexico, or on September 29, 1908, a contract in most elaborate form was made between Gonzales on the one side and Fulkerson, Schuster, Buchoz, W. W. Varn, and G. C. Varn, in the order named, on the other. By the terms of said contract the minuto de contracto between Gonzales and Fulkerson was first annulled, and the contract between Gonzales and the Chavez sisters of September 24, was recited substantially in complete form. Gonzales transferred and assigned to the five other parties his right and shares arising under the contract he had made with the Chavez sisters.

It had been contemplated that only the Varns should be grantees or assignees, but they were told by their interpreters and agents that the contract was so desirable that they, Fulkerson, Buchoz, and Schuster, would take an interest to the extent of one-half, and they and the Varns made then and there

a verbal agreement to become partners in the venture, and the instrument was so executed, Fulkerson taking one-fourth, Buchoz one-eighth, Schuster one-eighth, and the Varns one-half. The price of the "assignment" was $18,195, represented by one note for $15,000 gold, due January 1, 1909, with 8 per cent. interest, and one due in two years for $3,195, bearing the same interest. The "assignees" were to pay the interest Gonzales had promised to pay on the mortgage. It is recited that the instrument was read to the signers in Spanish by the notary, and in English by an appointed interpreter, but the Varns never saw the Chavez sisters contract with Gonzales, and understood he owned the land. The two notes were duly prepared in Spanish, and were signed by Fulkerson, Buchoz, Schuster, and the Varns, and were delivered to Gonzales, and were the notes sued on in this action.

On October 27, 1908, in El Paso, the verbal agreement of partnership above referred to was put into written form, but the recital in it was that the parties were to pay the $17,500 to the Chavez sisters, and the $18,195 represented by the notes and $10,000 in cash, making altogether $45,695 United States gold. It was specifically recited that to the payment of the $10,000 cash each of the parties had contributed in the proportion of Fulkerson one-fourth, Buchoz one-eighth, Schuster one-eighth, G. C. Varn one-fourth, and W. W. Varn one-fourth. The $17,500 to be paid the Chavez sisters was referred to as a debt of Gonzales assumed by the partnership, which appears to support the testimony of G. C. Varn that he believed the lands belonged to Gonzales. The Varns paid their one-half of the $10,000, and went upon the land and established a camp, and cut out trails, and proceeded to cut timber. When the interest installment became due November 1, 1908, G. C. Varn paid it. He agreed to make certain advances, and even to paying the $15,000 due January 1, 1909, if the partnership could not do so. The Varns believed that their copartners had paid in good faith their half of the $10,000, and were to pay their half of the notes, and but for such belief would not have made the contract. The jury so found.

Some time between November 1, 1908, and January 1, 1909, the Varns learned that their copartners and agents had not paid their half of the $10,000, or, if they did, it it had been returned to them by Gonzales, and that they were not to pay their half of the notes, which arrangement was a secret agreement between them and Gonzales, made when the Juarez contract was executed. The Varns on being so advised, at once sought out Gonzales and charged him with the deception and secret agreement, which he admitted, and offered to surrender the notes if the Varns would pay him $10,000 Mexican money, which they declined to do, but repudiated the contract, and offered Gonzales possession of the land, which he refused to accept, saying he would sue on the notes.

These facts are revealed by the record in practically undisputed form. Though Gonzales and the three interpreters, agents, and partners were on the stand, neither was even asked a question calling for a definite categorical denial of the allegations made by the Varns, on which the defense of fraud was based, and the court found as a fact that the secret agreement was made as alleged.

## Opinion.

[1] From the preliminary statement of the case set out above it is too clear to leave room for doubt or debate that the contract which was the basis of the action was void and unenforceable because contrary to public policy. It is practically undisputed that the three of the signers of the contract and notes, Fulkerson, Buchoz, and Schuster, stood in the threefold relation to the two other signers, the Varns, of interpreters, agents, and partners, and it is elementary law that in each and all of said relations there rested upon them the obligation to preserve the utmost good faith towards those who were at once their principals and partners. It is equally as clearly shown that they did not observe or perform that obligation, but, on the contrary, secretly conspired with the payee of the note to perpetrate a fraud on the Varns. There is no possible ground in morals or in law upon which an action based upon such a contract can be maintained. It has been so adjudged by the Supreme Court of Texas in the past, and those holdings are approved by the present Supreme Court, and the law is so laid down in the reports of many, if not all the other states and in the text-books. Seeligson v. Lewis, 65 Tex. 215, 57 Am. Rep. 593; Wegner v. Biering, 65 Tex. 506; Haswell v. Blake (Civ. App.) 90 S. W. 1125; Reed v. Brewer, 90 Tex. 144, 37 S. W. 418; Simon v. Garlitz, 63 Tex. Civ. App. 172, 133 S. W. 464.

"If a contract involves the violation of a penal law, the court will declare it void, and any agreement the object of which is to defraud an individual or two or more individuals is illegal, and it has been held that any contract which involves a fraud on the rights of others is against public policy." Elliott on Contracts, vol. 2, p. 8 et seq., and notes.

[2, 3] It was contended by appellee in the Court of Civil Appeals that the appellants ratified the contract, and on that ground alone that court affirmed the judgment. Such holding was, in our judgment, erroneous. The contract was clearly not subject to ratification. However, if it were, there is no testimony in the record sufficient to show ratification. Taking all the testimony for

plaintiff to be true, it as a matter of law was not sufficient to show ratification, while the testimony for the defendants, which was undisputed, shows that they did all they were required to do in a case springing out of fraud, when upon discovery of the secret and void agreement they promptly repudiated the contract and tendered back the property, which tender was refused. Dawson v. Sparks, 1 Posey, Unrep. Cas. 745; 2 Parsons on Contracts, 780. The trial court should have instructed a verdict for defendants, and erred in rendering the judgment for plaintiff, and the Court of Civil Appeals erred in affirming that judgment.

We recommend that the judgment of both the district court and the Court of Civil Appeals be reversed, and judgment be here rendered for plaintiffs in error against defendant in error for the $5,000 paid defendant in error by the Varns, and for the $750 paid by the Varns as interest on the mortgage, with interest on both of said sums from the date of the respective payments, and for all costs of all courts.

PHILLIPS, C. J. We approve the judgment recommended in this case.